TRIBAL SMOKESHOP, INC a/k/a Tribal Smokeshop Incorporated; Tribal Partners, Inc.; and Huntsville Wholesale Grocers, Inc.

v.

ALABAMA–COUSHATTA TRIBES OF TEXAS Acting By and Through its TRIBAL COUNCIL; Clayton Silistine, Acting as Chief of the Tribe; Clem Sylestine Acting as Chief of the Tribe; Morris Bullock, Individually and as Tribal Council; Kevin Battise, Individually and as Tribal Council; Melinda Sylestine, Individually and as Tribal Council; Sidney Poncho, Individually and as Tribal Council; Perry Williams Individually and as Tribal Council and Edwin Battise, Individually and as Tribal Council.

No. 9:99–CV–26.

United States District Court,
E.D. Texas,
Tyler Division.

Aug. 31, 1999.

James D. Hurst, Huntsville, TX, for plaintiffs.

Russell D. Leachman, Diamond Rash Gordon & Jackson, El Paso, TX, for defendants.

## MEMORANDUM OPINION

COBB, District Judge.

On or about October 15, 1998, the Tribal Council Chairman of the Alabama–Coushatta tribe and a non-Indian corporation entitled the Tribal Smokeshop, Inc., a/k/a Tribal Partners, Inc., entered into a written contractual agreement to build and operate a commercial venture on tribal lands. On or about November 20, 1998, the Alabama–Coushatta Council declared the agreement null and void allegedly because it had not been approved by

the Secretary of the Interior pursuant to 25 U.S.C. § 81. Shortly thereafter, on November 24, 1998, plaintiffs alleged via letter to the defendants that the cancellation of the agreement was wrongful. Defendants then filed an Original Complaint in the Tribal Court of the Alabama–Coushatta Tribes of Texas. Before adjudication of the matter in Tribal Court, plaintiffs filed a complaint in this court seeking relief on breach of contract and conversion. Plaintiffs later amended this complaint twice to include a violation of 25 U.S.C. § 1302 and to include a claim that federal question jurisdiction existed. In response, defendants filed a 12(b) Motion to Dismiss for lack of personal jurisdiction due to sovereign immunity of Indian tribes, lack of subject matter jurisdiction due to the tribal exhaustion rule and lack of diversity.[1]

Plaintiffs seek monetary damages only for breach of contract and conversion claims against the tribe and the tribal council individually.

## ANALYSIS

The Alabama–Coushatta are a federally recognized Indian tribe within the meaning of the Constitution and Laws of the United States. 25 U.S.C. § 731 et seq. (the Restoration Act).

"Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma,* 498 U.S. 505, 509, 111 S.Ct.

1. Plaintiffs originally asserted diversity jurisdiction but apparently conceded the argument in Plaintiff's Second Amended Complaint (p. 1). In any event, there is no diversity jurisdiction in the present case. Indian tribes are deemed to be citizens of the state in which they are located for purposes of jurisdiction. *See Schantz v. White Lightning,* 502 F.2d 67, 70 (8th Cir.1974) (finding no diversity jurisdiction where non-Indian plaintiffs sued tribe which was located in the same state); *Superior Oil Co. v. Merritt,* 619 F.Supp. 526, 531

(D.C.Utah 1985) (finding Indian defendants were citizens of the state in which the reservation was located). Plaintiffs and defendants are residents of Texas, thus there can be no diversity jurisdiction.

As to the other bases jurisdiction: sovereign immunity goes to subject matter jurisdiction, not personal jurisdiction. Tribal exhaustion is a matter of comity, not a jurisdictional prerequisite. *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 16 n. 8, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987).

905, 112 L.Ed.2d 1112 (1991). Pursuant to federal law, Indian tribes are protected from suit by sovereign immunity. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). The only exception to this rule are instances in which Congress has authorized the suit or immunity has been waived by the tribe. *Kiowa Tribe v. Manufacturing Technologies* 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998).

█ Plaintiff first claims that torts, specifically conversion, are not precluded by sovereign immunity citing the *Kiowa* decision—this interpretation is incorrect. Nothing in *Kiowa* could be construed to limit sovereign immunity to contractual claims in fact, the Court expanded the scope of sovereign immunity by including contracts made off the reservation for governmental or commercial activities. *Id.* at 760, 118 S.Ct. 1700. The court made no distinction between tort and contract claims in applying sovereign immunity. "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa*, 523 U.S. at 754, 118 S.Ct. 1700. To be sure, other courts have applied sovereign immunity to tort claims. *See e.g., Schantz*, 502 F.2d at 67 (barring a tort action stemming from an automobile accident); *Elliott v. Capital Int'l Bank & Trust, Ltd.*, 870 F.Supp. 733 (E.D.Tex.1994) (holding sovereign immunity barred suit where plaintiff was "bilked out of $200,000").

█ Alternatively, Plaintiff claims that the tribe waived its sovereign immunity by "agreeing to a method of calculating damages contained in the agreement." (Plaintiff's Response to Motion to Dismiss, p. 2). However, a waiver of sovereign immunity by the tribe must be clear and unequivocal to be effective. *Oklahoma*

*Tax Comm'n v. Potawatomi Tribe*, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991); *Santa Clara*, 436 U.S. at 58, 98 S.Ct. 1670; *Fletcher v. United States*, 116 F.3d 1315, 1324 (10th Cir.1997). Waivers of sovereign immunity cannot be implied. Here, the parties contractually agreed on a damages clause in the contract. While courts have held that arbitration clauses have constituted waivers of immunity, those clauses themselves are clear and unambiguous as to the waiver. *See e.g., Altheimer & Gray v. Sioux Mfg. Corp.*, 983 F.2d 803, 812 (7th Cir.1993) (finding waiver where letter of intent specifically provided sovereign immunity would be waived as to contract claims); *Tamiami Partners v. Miccosukee Tribe of Indians*, 788 F.Supp. 566, 568 (S.D.Fla. 1992) (waiver where contract specifically granted the United States District Court for the Southern District of Florida jurisdiction to enforce the arbitration clause of a contract). Plaintiff does not assert that any other act of the defendants constituted a clear and unambiguous waiver. A mere agreement as to liquidated damages without more does not constitute a waiver of sovereign immunity.

█ Plaintiff also argues its cause of action for conversion raises a federal question under 25 U.S.C. § 1302(8) of the Indian Civil Rights Act of 1968 (herein referred to as the "ICRA") (prohibiting Indian tribes from denying "to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law"). If the provision applied, it would be a congressional waiver of sovereign immunity. However, the alleged violation is not actionable under this section as mere contract claims do not constitute federal questions.[2] The purpose of the ICRA was to strengthen tribal self-government and

---

2. *See Ramey Const. v. Apache Tribe of Mescalero Reservation*, 673 F.2d 315 (10th Cir. 1982) (holding a general contractor's claim for money retained under a contract did not rise to an actionable level of deprivation un-

der § 1302(8)); *see also Ysleta*, at 681 (noting that federal courts do not have jurisdiction to hear routine contract claims involving indian tribes).

to guarantee basic civil rights. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 62, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). In order to protect the civil rights of Native Americans, the ICRA scheme mandates that tribal courts apply a modified version of the Bill of Rights listed in § 1302 in addition to tribal laws and customs. Thus, in *Santa Clara*, the Court noted that a federal court remedy for an ICRA violation would be at odds with the policy for self-government. *Id.* at 64, 98 S.Ct. 1670. Thus, the ICRA does not provide a private cause of action against Indian tribes. *Id.*, at 59, 98 S.Ct. 1670; *see also Runs After v. United States*, 766 F.2d 347, 352 (8th Cir.1985) (noting that actions seeking relief for tribal deprivations of rights other than habeas corpus must be resolved through tribal forums).

Recently, the Fifth Circuit in *TTEA v. Ysleta Del Sur Pueblo*, 181 F.3d 676 (5th Cir.1999) held that while sovereign immunity bars suits against the tribe, it did not bar suits against tribal officials for declarative and injunctive relief. The court noted that tribal sovereign immunity should have the same limits as state sovereign immunity. *Id.* at 680; *see e.g., Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Thus, claims for declaratory and injunctive relief against tribal officials (in their official capacities) are allowed, but claims for monetary damages remain barred by sovereign immunity. *Ysleta*, at 680. The Fifth Circuit relied on the Supreme Court's earlier decision in *Puyallup Tribe v. Department of Game of the State of Washington*, 433 U.S. 165, 171, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977) which permitted suits to enjoin tribal members from violating state law. Here the plaintiffs seek only monetary damages from a breach of contract and not declarative or injunctive relief so the exception carved out by *Ysleta* offers no relief to the plaintiff.

■ Plaintiff attempts to circumvent this by asserting claims against the tribal counsel individually. Tribal counsel, like state officials, are protected by sovereign immunity. *See Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 148, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982) (applying state and federal sovereign immunity rules to determine whether tribe had waived its sovereign immunity); *Fletcher*, 116 F.3d at 1324 (finding individual tribal counsel members were entitled to sovereign immunity in their official capacities). Here, Plaintiff claims tribal counsel did not follow tribal procedure in declaring the contract null and void and thus the individual counsel members are subject to suit because they exceeded the scope of their official capacity. Even if it is true that defendants acted without following the proper formalities, the defendants nevertheless were acting as the decision making body of the tribe. Plaintiffs assert individual defendants, who make up the tribal council, conspired to breach the contract. First, members of a tribal council cannot conspire amongst themselves. *See Runs After*, 766 F.2d at 354. Second, even if plaintiffs asserted valid claims as to conspiracy and tortious interference with contract, these causes of action do not raise federal questions—they are Texas state law claims.

The court finds that there is no federal question jurisdiction in the present case. Since there is no diversity jurisdiction, there is no basis for federal jurisdiction in this case.

Tribal Exhaustion Requirement

■ In the alternative, even if there is federal question jurisdiction, this court would still be required to dismiss the case under the Tribal exhaustion rule. *See National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 857, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) (requiring exhaustion of tribal remedies before federal court entertained action under federal question jurisdiction). A stay or dismissal for failure to pursue remedies in tribal court would not guarantee that plaintiffs would have jurisdiction upon returning to federal court as the Court noted, "[e]xhaustion is

required as a matter of comity, not as a jurisdictional prerequisite." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 16 n. 8, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987).

Plaintiffs argue that they should be excused from the exhaustion requirement because "the Alabama–Coushatta tribe does not have a duly organized and legal tribal court system in place." (Plaintiff's Response to Defendant's Motion to Dismiss para. 12) However, plaintiffs have already initiated a lawsuit in the tribal courts of the Alabama–Coushatta tribe and that case is currently pending. Plaintiffs assert that the tribal court system must be approved by the Secretary of the Interior, the United States Attorney General, and the members of the tribe however, they offer no authority for this proposition and none has been found. Tribes have wide authority to determine the structure and procedure of their tribal courts. *See* Felix S. Cohen, Handbook of Federal Indian Law § C4, at 251 (1982). The Code of Judicial Conduct for the tribe which plaintiffs provide as an exhibit, establishes a valid tribal court system. While the tribal council also serves as the Court of Appeals, the code specifies that members of the tribal council cannot also be tribal court judges. Tribal Code § 10(C)(1). Further, the Judicial code disqualifies judges who are interested in the outcome of the case. Tribal Code § 18.01(B). On its face at least, the Tribal Judicial Code establishes a valid judicial system. As noted above, Indian tribes are considered domestic dependant nations—this court must respect the sovereignty of the Alabama–Coushatta tribe of Texas.

■ Plaintiffs' last argument asserts a federal question under 28 U.S.C. § 1331 as to whether the Tribal Court exceeded its jurisdiction by requiring a non-Indian to submit to its jurisdiction. A breach of contract claim based on activities on reservation land is clearly within the jurisdiction of the tribal courts. The mere fact that there is a non-Indian party is not sufficient to remove jurisdiction much less overcome sovereign immunity.

Plaintiffs argue that exhaustion of tribal remedies is not required and cite *Strate* and *National Farmers* for support. Neither applies in the present case. In *Strate*, the Court found that the tribal court did not have jurisdiction over tort claims arising from an accident that occurred on a highway maintained by the federal government even though the highway went over tribal land. The court applied the rule in *Montana v. United States*, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981) which stated "absent a different congressional direction, Indian tribes lack civil authority over the conduct of non-members on non-Indian land within a reservation" this is subject to two exceptions: nonmembers who enter consensual relationships and activity which directly affects the tribe's political integrity, economic security, health, or welfare. *Strate*, 520 U.S. at 446, 117 S.Ct. 1404 (citing *Montana*, 450 U.S. at 565–66, 101 S.Ct. 1245). Plaintiffs do not dispute that the contract concerned reservation land and do not explain how the *Montana* rule would apply. In *National Farmers*, the Supreme Court noted that it would be premature for a federal court to consider any relief until the remedies of the tribal court system are exhausted. *National Farmers*, 471 U.S. at 857, 105 S.Ct. 2447. The Court recognized that the Tribal Court should have the first opportunity to evaluate the challenge to its jurisdiction and required the federal court to "stay its hand until the Tribal Court has had a full opportunity to determine its own jurisdiction." *National Farmers*, 471 U.S. at 857, 105 S.Ct. 2447. Thus, even if the plaintiffs properly assert a federal question as to whether the tribal court exceeded jurisdiction, that claim must be stayed until the tribal remedies are exhausted.

Plaintiffs argue that exhaustion would be useless and apparently assert the narrow exception created by the Tenth Circuit in *Dry Creek Lodge, Inc. v. Arapahoe and Shoshone Tribes*, 623 F.2d 682, 685 (10th

Cir.1980) which excused exhaustion of tribal remedies and provided the district court as a forum when the issue related to (1) a matter outside of internal tribal affairs, (2) concerning a non-Indian, and (3) there was no access to tribal courts. This exception was narrowed by the same court in *White v. Pueblo of San Juan*, 728 F.2d 1307, 1312 (10th Cir.1984) which held that a plaintiff must actually first seek a tribal remedy which if it exists is exclusive. In the present case, the plaintiffs have a case pending in tribal court, since none of the claims present a federal question, the case must be dismissed.

For the reasons stated above, defendants' Motion to Dismiss should be GRANTED.