**AMERICAN VANTAGE COMPANIES, INC., Plaintiff–Appellant,**

v.

**TABLE MOUNTAIN RANCHERIA, Defendant–Appellee.**

No. 00–17355.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 2002.

Filed June 14, 2002.

As Amended on Denial of Rehearing July 29, 2002.

Gregory S. Cavallo, Jeffer, Mangels, Butler & Marmaro, San Francisco, CA, for the plaintiff-appellant.

Paula M. Yost, Sonnenschein Nath & Rosenthal, San Francisco, CA, for the defendant-appellee.

Before: REINHARDT, MAGILL * and FISHER, Circuit Judges.

FISHER, Circuit Judge.

We hold that an unincorporated Indian tribe such as appellee is not a "citizen" of a state within the meaning of the federal diversity statute, 28 U.S.C. § 1332(a)(1), and thus cannot sue or be sued in diversity. The district court's dismissal of this action for want of subject matter jurisdiction is affirmed.

## FACTS AND PROCEDURAL BACKGROUND

Appellee Table Mountain Rancheria ("Table Mountain") is a federally recognized Indian tribe located in Fresno County, California, where it owns and operates a casino on reservation land. Neither the tribe nor the casino is incorporated under federal, state or tribal law. The parties

---

* The Honorable Frank J. Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

entered a contract through which appellant American Vantage Companies, Inc. ("American Vantage"), a Nevada corporation, provided gaming management and consulting services to the tribe in connection with operation of the casino. The contract states that the tribe "waives its sovereign immunity from suit solely for the purposes of enforcement of the terms of this Agreement" and that "either party to this Agreement may seek appropriate relief in a United States District Court, unless the parties agree to an alternate forum, for the breach of the Agreement." The tribe also executed a promissory note in favor of American Vantage.

Table Mountain unilaterally terminated the contract in 1999, a year before its expiration, prompting American Vantage to file suit against Table Mountain in federal district court in California for breach of contract and for amounts allegedly due under the promissory note. American Vantage's complaint asserted subject matter jurisdiction solely on the basis of diversity of citizenship. The district court sua sponte dismissed the complaint without prejudice for want of subject matter jurisdiction, holding that the parties were not diverse within the meaning of § 1332(a)(1) because an Indian tribe is not a citizen of any state. The court also invited the parties to file additional pleadings setting

forth a basis for jurisdiction. In response, American Vantage moved to amend its complaint and to join the casino as an additional defendant. Again, it asserted only diversity jurisdiction. The district court reiterated its ruling that diversity jurisdiction did not exist as to the tribe; ruled that the casino, an unincorporated arm of the tribe, likewise could not be sued in diversity; and dismissed the action with prejudice. American Vantage timely appealed. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## STANDARD OF REVIEW

We review de novo both the district court's conclusion that it lacked subject matter jurisdiction, *Linneen v. Gila River Indian Cmty.*, 276 F.3d 489, 492 (9th Cir. 2002), and questions of statutory interpretation. *Alexander v. Glickman*, 139 F.3d 733, 735 (9th Cir.1998).

## DISCUSSION

### I. *Diversity Jurisdiction*

#### A.

We must determine whether the Table Mountain tribe or its casino, each of which is unincorporated, is subject to diversity jurisdiction.[1] The diversity statute, 28 U.S.C. § 1332, makes no mention of Indian tribes. American Vantage, how-

---

**1.** This would be a different case if Table Mountain were incorporated. An Indian tribe may incorporate or charter a corporation using one of two methods: it can incorporate under section 17 of the Indian Reorganization Act, 25 U.S.C. § 477, or it can become a corporation pursuant to its own tribal laws. *Gaines v. Ski Apache*, 8 F.3d 726, 729 (10th Cir.1993). A tribal subentity also may incorporate under state law. William C. Canby, Jr., *American Indian Law* 94–95 (3d ed.1998). An incorporated tribe, or an incorporated arm of a tribe, is, like any other corporation, ordinarily a citizen of the state in which it resides. *See Stock West, Inc. v. Confederated Tribes of the Colville Res-*

*ervation*, 873 F.2d 1221, 1223 n. 3, 1226 (9th Cir.1989) (holding that tribal entities organized pursuant to tribal law were state citizens and stating that, "for purposes of diversity jurisdiction, an Indian corporation is a citizen of the state in whose borders the reservation is located"); *R.J. Williams Co. v. Fort Belknap Hous. Auth.*, 719 F.2d 979, 982 & n. 2 (9th Cir.1983) (holding that an incorporated tribal housing authority was a state citizen); accord Canby, *supra*, at 207 ("A tribe may ... incorporate and thereby become a citizen of the state of its principal place of business for purposes of diversity jurisdiction.").

ever, contends that an Indian tribe is subject to diversity jurisdiction under § 1332(a)(1), which creates jurisdiction over actions involving "citizens of different States." [2] The parties agree that American Vantage is a citizen of Nevada but dispute whether the tribe and the casino are citizens of California within the meaning of § 1332(a)(1).

Most courts to have considered the question—including the First, Second, Eighth and Tenth Circuits—agree that unincorporated Indian tribes cannot sue or be sued in diversity because they are not citizens of any state. *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.,* 207 F.3d 21, 27 (1st Cir.2000) (holding that "the presence of an Indian tribe destroys complete diversity" because "[a]n Indian tribe ... is not considered to be a citizen of any state"); *accord Romanella v. Hayward,* 114 F.3d 15, 16 (2d Cir.1997) (per curiam); *Gaines v. Ski Apache,* 8 F.3d 726, 729 (10th Cir.1993); *Standing Rock Sioux Indian Tribe v. Dorgan,* 505 F.2d 1135, 1140 (8th Cir.1974); *Barker–Hatch v. Viejas Group Baron Long Capitan Grande Band of Digueno Mission Indians,* 83 F.Supp.2d 1155, 1157 (S.D.Cal. 2000); *Calumet Gaming Group–Kansas, Inc. v. Kickapoo Tribe,* 987 F.Supp. 1321, 1324–25 (D.Kan.1997) (holding that court lacked diversity jurisdiction over gaming consultant's state law claims against Indian tribe for breach of consulting agreement and default on loan); *Abdo v. Fort Randall Casino,* 957 F.Supp. 1111, 1112 (D.S.D.1997) (holding that neither Indian tribes nor a tribally owned and operated casino are citizens of state for purposes of

diversity); *cf.* William C. Canby, Jr., *American Indian Law* 207 (3d ed.1998) [hereinafter Canby] ("An Indian tribe that is not incorporated is not a citizen of any state and cannot be sued in federal court on the basis of diversity."); Felix S. Cohen, *Handbook of Federal Indian Law* 372 (reprint ed.1988).

Against this weight of authority, a few district courts have decided otherwise. *See Warn v. E. Band of Cherokee Indians,* 858 F.Supp. 524, 526 (W.D.N.C.1994) (holding that the court had diversity jurisdiction over a breach of contract claim by a non-Indian against the tribe and tribal council members); *Tribal Smokeshop, Inc. v. Alabama–Coushatta Tribes,* 72 F.Supp.2d 717, 718 n. 1 (E.D.Tex.1999) (stating that Indian tribes are deemed to be citizens of the state in which they are located for the purpose of diversity jurisdiction).

■ American Vantage points out that the decisions underlying the majority rule offer little in the way of reasoning in support of their conclusion that an Indian tribe is not a citizen of any state. We nonetheless agree that the majority of courts have decided this question correctly and adopt the majority rule. We base our conclusion on several considerations. First, as dependent domestic sovereign nations, Indian tribes are not state citizens. Second, despite ample opportunity, Congress has not seen fit to confer state citizenship on Indian tribes. Finally, because our holding is consistent with every other circuit to address this issue, we advance the interest of uniformity in a uniquely federal area of law.

---

**2.** American Vantage does not argue that diversity jurisdiction exists in this case under any other provision of § 1332(a). Our holding is therefore limited to § 1332(a)(1), although it appears that an unincorporated Indian tribe is not subject to diversity jurisdiction under any other provision of the statute. *See Superior Oil Co. v. Merritt,* 619

F.Supp. 526, 531 (D.Utah 1985) (holding that an Indian tribe is not a foreign state for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a)(4), which creates jurisdiction over a foreign state as plaintiff and a citizen of a state); *cf. Stock West,* 873 F.2d at 1226 ("[I]t is perhaps clear that an Indian tribe is not a foreign state.").

## 1. Dependent Domestic Sovereigns

 First, the rule that a tribe is not a citizen of any state is supported by the status of Indian tribes as dependent domestic sovereigns. Tribes are, foremost, sovereign nations. They "retain[ ] their original natural rights" as "aboriginal entit[ies] antedating the federal [and state] government[s]." *Romanella*, 114 F.3d at 16. Second, Indian tribes are "domestic dependent nations." *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991). There exists a unique relationship between the federal government and Indian tribes, and the federal government possesses plenary power over tribes. *See, e.g., Washington v. Confederated Bands and Tribes of Yakima Indian Nation*, 439 U.S. 463, 503, 99 S.Ct. 740, 58 L.Ed.2d 740 (1979) (Marshall, J., dissenting) (describing "the unique relationship between the Federal Government and the Indian people"); *United States v. Wheeler*, 435 U.S. 313, 323, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978) (stating that Indian tribes' sovereignty "exists only at the sufferance of Congress and is subject to complete defeasance").

 The status of Indian tribes as sovereign entities, and as federal dependents, contradicts conventional notions of citizenship in general and *state* citizenship in particular. A citizen is "[a] person who . . . is a member of a political community, owing allegiance to the community and being entitled to enjoy all its civil rights and protections. . . ." Black's Law Dictionary (7th ed.1999). Tribes fall outside this definition. Rather than belonging to state political communities, they themselves are " 'distinct, independent political communities.' " *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (quoting *Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 559, 8 L.Ed. 483 (1832)). Tribes also owe no allegiance to a state. Because "Congress possesses plenary power over Indian affairs," *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 343, 118 S.Ct. 789, 139 L.Ed.2d 773 (1998), Indian tribes fall under nearly exclusively federal, rather than state, control. *Cf. Washington v. Confederated Tribes of Colville Reservation*, 447 U.S. 134, 154, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980) ("[I]t must be remembered that tribal sovereignty is dependent on, and subordinate to, only the Federal Government, not the States"). Moreover, tribal sovereignty and federal plenary power over Indian affairs, taken together, sharply circumscribe the power of the states to impose citizen-like responsibilities on Indian tribes. *See* Canby, *supra*, at 79 (observing that tribal sovereignty has "operated to a considerable degree as a shield against intrusions of state law into Indian country"); *Boyer v. Shoshone–Bannock Indian Tribes*, 92 Idaho 257, 441 P.2d 167, 170 (1968) (summarizing traditional view that "state law has no force and effect, except as granted by federal law, within the territory of an Indian tribe in matters affecting Indians"). Thus, for instance, states possess limited power to assert jurisdiction on Indian land and to tax and regulate Indian affairs.[3]

**3.** States have limited powers to assert jurisdiction on Indian land, *see, e.g., Williams v. Lee*, 358 U.S. 217, 223, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959) (holding that state courts had no jurisdiction over a civil claim against an Indian for a transaction occurring on the Navajo reservation); to tax reservation Indians or reservation lands, *see, e.g., Okla. Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 458, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995) (holding that state could not apply its motor fuels tax to fuels sold by tribe in Indian country); *County of Yakima v. Confederated Tribes and Bands of the Yakima Indian Nation*, 502 U.S. 251, 270, 112 S.Ct. 683, 116 L.Ed.2d 687 (1992) (holding that county could not enforce its excise tax on sales of reservation land);

Furthermore, domestic sovereigns are not citizens of states for purposes of diversity jurisdiction. The states—themselves domestic sovereigns—"cannot sue or be sued in diversity," *Romanella,* 114 F.3d at 16, because they are not citizens of any state. *Moor v. County of Alameda,* 411 U.S. 693, 717, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). The rule that American Vantage urges would result in disharmony in the treatment of domestic sovereigns.[4]

### 2. *Congressional Intent*

Second, Congress has not manifested an intent to confer state citizenship on Indian tribes. For much of this nation's history, Indians as persons were not considered citizens of a state for purposes of diversity jurisdiction. *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 17–18 & n. 10, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987). That changed in 1924, when Congress extended federal citizenship to Indians. *Id.* By operation of the Fourteenth Amendment, that act also created state citizenship for Indians. *Id.* In contrast to Congress' treatment of Indians as individuals, no act of Congress has spoken to, let alone created, state or national citizenship for Indian tribes.

We also find it implausible that Congress intended the diversity statute to reach unincorporated Indian tribes. When the diversity statute was first enacted in 1789, it "made no mention of Indians, and it is unlikely that Congress had the future status of the Indian tribes in mind." *Superior Oil Co. v. Merritt,* 619 F.Supp. 526, 533 (D.Utah 1985). In the ensuing 213 years, Congress indisputably has had Indian tribes in mind, and has amended the diversity statute on numerous occasions. Yet the statute continues to make no mention of Indian tribes. Notably, Congress has revisited the diversity statute several times since the courts have construed § 1332(a)(1) to exclude Indian tribes, but has manifested no inclination to overrule that interpretation. *See* Pub.L. 94–583, § 3, 90 Stat. 2891 (1976); Pub.L. 100–702, Title II, §§ 201(a), 202(a), 203(a), 102 Stat. 4646 (1988); Pub.L. 104–317, Title II, § 205(a), 110 Stat. 3850 (1996).

We also find instructive the Maine Indian Claims Settlement Act of 1980. The Settlement Act expressly subjects Maine Indian tribes to diversity jurisdiction. *Akins v. Penobscot Nation,* 130 F.3d 482, 485 (1st Cir.1997). Had Congress believed the diversity statute covered Indian tribes, the explicit command of the Settlement Act, providing that Maine tribes "may sue and be sued in the courts of the ... United States to the same extent as

---

*McClanahan v. Ariz. State Tax Comm'n,* 411 U.S. 164, 179–81, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973) (holding that Arizona could not tax the income of an Indian earned on the reservation); to regulate hunting and fishing on Indian lands, *see New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 343–44, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983) (holding that state was preempted from regulating hunting and fishing by non Indians on the reservation); and to regulate gaming on Indian land, *see California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 221–22, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987) (holding that state could not regulate high stakes bingo and poker games operated by tribes on reservation land).

**4.** Adopting American Vantage's argument also would put us in the perhaps unprecedented position of deeming one sovereign to be the citizen of another. We are unaware of any authority supporting that result. *Cf. Buda v. Saxbe,* 406 F.Supp. 399, 403 (E.D.Tenn.1974) (holding that a state is not a citizen of the United States within the meaning of 42 U.S.C. § 1983); *White Mountain Apache Tribe v. Williams,* 810 F.2d 844, 865 n. 16 (9th Cir.1987) (B. Fletcher, J., dissenting) ("[I]t is doubtful whether [a] Tribe qua sovereign would qualify as a 'citizen of the United States or other person' eligible to bring an action under § 1983[.]").

any other entity or person residing in the State of Maine may sue and be sued in those courts," 25 U.S.C. § 1725(d)(1), would have been superfluous. It is a well-established principle of statutory construction that "legislative enactments should not be construed to render their provisions mere surplusage." *Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 472, 117 S.Ct. 913, 137 L.Ed.2d 93 (1997). We will not, therefore, read § 1725(d)(1) as a redundant enactment of § 1332(a)(1).

### 3. *Uniformity of Federal Law*

▉▉▉▉▉ Third, although we are by no means compelled to follow the decisions of other circuits, "there is virtue in uniformity of federal law as construed by the federal circuits." *James v. Sunrise Hosp.*, 86 F.3d 885, 889 (9th Cir.1996). Where, as here, every other circuit to have addressed an important question of federal law has reached a common result, we give some weight to the interest in uniformity.

▉▉▉▉▉ We therefore join four other circuits in holding that an unincorporated Indian tribe is not a citizen of any state within the meaning of § 1332(a)(1).[5] Table Mountain, as an unincorporated tribe, is not a citizen of California (or any other state), so complete diversity in this action does not exist. American Vantage cannot alter that fact by joining the tribe's casino as an additional defendant. The casino, as an unincorporated arm of the tribe, also is a stateless entity. *See Ninigret*, 207 F.3d at 27 ("We see no reason why ... an arm of the Tribe, not separately incorporated[ ]

should be treated any differently [from the Tribe] for jurisdictional purposes."); *Gaines*, 8 F.3d at 730.[6]

### B.

American Vantage argues in the alternative that Table Mountain (or the casino) is a citizen of California because it has waived immunity from suit, behaves like a corporation or is an unincorporated association. We reject each of these arguments as well.

### 1. *Waiver of Immunity*

▉▉▉▉ Relying on the historical progression of Indian law, American Vantage contends that Table Mountain should be considered a citizen of California because it waived sovereign immunity for disputes arising from the contract. American Vantage says, in essence, that a tribe should be treated as a corporation (and thus as a citizen) when it consents to suit.

We acknowledge there is an historical connection between waiver of immunity and incorporation of Indian tribes. When Congress enacted section 17 of the Indian Reorganization Act of 1934, giving tribes the power to incorporate, it did so in part to enable tribes to waive sovereign immunity, thereby facilitating business transactions and fostering tribal economic development and independence. *See Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 157, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973) (majority opinion) (stating purpose of Act to "encourage tribal enterprises to enter into

---

**5.** Although we recognize the argument that the majority rule produces an "unfortunate" result, Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 13B *Federal Practice & Procedure* § 3622 (Supp.2001), we decline to import that policy argument into our analysis. "[P]leas for extension of the diversity jurisdiction to hitherto uncovered broad categories of litigants ought to be made to the Congress and not to the courts." *United Steelworkers of*

*Am. v. R.H. Bouligny, Inc.*, 382 U.S. 145, 150–51, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965).

**6.** Even if the casino were a citizen for diversity purposes, diversity jurisdiction would fail so long as the Table Mountain tribe remained a party. *See Ninigret*, 207 F.3d at 27 ("[N]otwithstanding the joinder of other diverse parties, the presence of an Indian tribe destroys complete diversity.").

the white world on a footing of equal competition") (internal quotation marks and citations omitted); *id.* at 159, 93 S.Ct. 1267 (Douglas, J., dissenting in part) (observing that one of the primary purposes of the Act was to "permit Indian tribes to equip themselves with the devices of modern business organization, through forming themselves into business corporations,"); *Parker Drilling Co. v. Metlakatla Indian Cmty.,* 451 F.Supp. 1127, 1131 (D.Alaska 1978) (observing that Congress enacted section 17 "[r]ecognizing that the protection of sovereign immunity would put the Indian tribe at a competitive disadvantage in obtaining credit and entering into business transactions"). But we reject the notion that this historical connection between waiver of immunity and incorporation means that a waiver of immunity creates de facto incorporation, let alone de facto state citizenship.

 A tribe that elects to incorporate does not automatically waive its tribal sovereign immunity by doing so. *See Parker Drilling,* 451 F.Supp. at 1136; *see also Ransom v. St. Regis Mohawk Educ. & Cmty. Fund, Inc.,* 86 N.Y.2d 553, 635 N.Y.S.2d 116, 658 N.E.2d 989, 994–95 (1995); Canby, *supra,* at 94–95. And it is not the act of waiving immunity that makes the incorporated tribe a citizen of its state of incorporation, but rather its voluntary acceptance of the rights and responsibilities attendant to formal incorporation. Today, under modern Indian law, a tribe may elect to waive immunity without incorporating—as Table Mountain did here.[7] *See* Canby, *supra,* at 93 ("A tribe

may waive its sovereign immunity by contract."). But that election is not tantamount to a tribal decision to submit to corporate obligations as if it had also elected to incorporate. We therefore reject the contention that a tribe's waiver of sovereign immunity creates state citizenship for diversity jurisdiction purposes. *See Weeks Constr., Inc. v. Oglala Sioux Hous. Auth.,* 797 F.2d 668, 671–72 (8th Cir.1986) (holding that a tribal agency's waiver of sovereign immunity does not confer subject matter jurisdiction on the federal court).

### 2. *Acting in a Commercial Capacity*

American Vantage next argues that the casino, although not incorporated, should be treated as a corporation—and thus as a citizen—because it is *acting* like a corporation. Again, American Vantage cites no persuasive authority supporting its argument.[8] Two circuits have addressed similar arguments and rejected them. In *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.,* 207 F.3d 21, 26–27 (1st Cir.2000), the First Circuit held that an unincorporated housing authority functioning as an arm of a tribe was not a citizen of any state for jurisdictional purposes even though it "embarked upon a series of business transactions." *Id.* at 25. The Tenth Circuit in *Gaines v. Ski Apache,* 8 F.3d 726 (10th Cir.1993), addressed a negligence action against a tribe for an accident occurring at Ski Apache, the tribe's unincorporated, off-reservation ski resort. Rejecting the argument that the resort was subject to diversity jurisdiction because it was "the functional equivalent of a corporation," *id.* at 728, the court

---

7. For the purposes of this appeal, we assume without deciding that the contract provision purporting to waive the trible's sovereign immunity constitutes an effective waiver.

8. American Vantage relies on *R.C. Hedreen Co. v. Crow Tribal Hous. Auth.,* 521 F.Supp. 599 (D.Mont.1981), *disagreed with on other grounds by R.J. Williams Co. v. Fort Belknap*

*Hous. Auth.,* 719 F.2d 979, 985 (9th Cir.1983). *Hedreen,* however, stands for the unremarkable proposition that a housing authority incorporated by tribal ordinance is the equivalent of a corporation created under state or federal law for diversity purposes. *See id.* at 602–03. Here, neither the tribe nor the casino is incorporated under law, tribal or otherwise.

observed that the "Supreme Court has rejected attempts to treat entities in the nature of corporations *as* corporations for purposes of diversity jurisdiction." *Id.* at 730 (citing *United Steelworkers of Am. v. R.H. Bouligny, Inc.,* 382 U.S. 145, 149–51, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965)).[9] "[T]he relevant question for purposes of diversity jurisdiction is whether Ski Apache has been incorporated ..., not whether it is an [economic] enterprise of the tribe." *Id.*

 The Supreme Court's decision in *Kiowa Tribe v. Manufacturing Technologies, Inc.,* 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998), buttresses the reasoning of the First and Tenth Circuits. There, a payee brought suit to recover on a promissory note executed by an Indian tribe, and the tribe moved to dismiss based on sovereign immunity. The payee argued that the tribe should be prevented from taking advantage of immunity from suit because the note was related to commercial activities. Conceding that it might be unfair to unsuspecting tort victims and business partners to permit a tribe to engage in commercial activities while retaining sovereign immunity, *id.* at 758, 118 S.Ct. 1700, the Court nonetheless held that a tribe is not stripped of sovereign immunity merely because it engages in commercial activities. *Id.* at 760, 118 S.Ct. 1700. That reasoning applies with equal force here. A tribe does not shed immunity merely by embarking on a commercial enterprise. Neither does it shed noncitizenship, which, like immunity from suit, finds its genesis in tribal sovereignty.

 In further support of its contention that the casino should be deemed a

corporation notwithstanding its formally unincorporated status, American Vantage points to the example of political subdivisions of states. American Vantage cites *Moor v. County of Alameda,* 411 U.S. 693, 721, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), in which the Court held that a California county "ha[d] a sufficiently ..., corporate character to dictate that it be treated as a citizen of California" for diversity purposes. 411 U.S. at 721, 93 S.Ct. 1785. The Court affirmed its prior rule that "a political subdivision of a State, unless it is simply the arm or alter ego of the State, is a citizen of the State for diversity purposes." *Id.* at 717, 93 S.Ct. 1785 (internal quotation marks and footnote omitted). But "*Moor* does not establish as a general principle that any independent self-governing entity should be treated as a citizen for purposes of diversity jurisdiction." *Gaines,* 8 F.3d at 730. Tribes are not analogous to political subdivisions of states. Unlike political subdivisions, tribes are themselves sovereign and do not derive their power from the state. *See* Canby, *supra,* at 71 ("[A] tribe is quite unlike a city or other subdivision of a state.... A tribe ... is its own source of power.").

### 3. *Unincorporated Association*

 Finally, American Vantage belatedly argues in its reply brief that the tribe is an unincorporated association. It cites no authority holding that a tribe must be treated as such. Indeed, the Second Circuit considered and rejected such an argument in *Romanella.* 114 F.3d at 16; *cf. Gaines,* 8 F.3d at 730 ("Both parties agree that an Indian tribe is not an unincorporated association.").[10] We reject it as well.

**9.** In *United Steelworkers,* the Supreme Court was asked to determine if a labor union, an unincorporated association, should be treated like a corporation for diversity purposes. The Court recognized that it was unfair to treat a corporation as a citizen of one state, even though its shareholders might reside in different states, but to permit a labor union to

defeat diversity because its members might reside in different states. 382 U.S. at 149–50, 86 S.Ct. 272. Although it found these arguments "appealing," the Court declined to hold that labor unions should be treated like corporations. *Id.* at 150–51, 86 S.Ct. 272.

**10.** Under federal law, Indian tribes are treated as legal entities distinct from unincorpo-

## II. *Federal Question Jurisdiction*

 American Vantage argues for the first time on appeal that the district court had subject matter jurisdiction on the basis of a federal question. As a general rule, we will not consider an issue raised for the first time on appeal. *United States v. Robinson,* 20 F.3d 1030, 1032 (9th Cir. 1994). Because the plaintiff is the absolute master of what jurisdiction it invokes, "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 809 n. 6, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). Accordingly, we hold that American Vantage has waived the issue of federal question jurisdiction.[11]

## CONCLUSION

The order of the district court dismissing this action for want of subject matter jurisdiction is **AFFIRMED.**

---

rated associations. *See, e.g.,* 28 U.S.C. § 3002(10) (" 'Person' includes a natural person (including an individual Indian), a corporation, a partnership, an unincorporated association, a trust, or an estate, or any other public or private entity, including a State or local government or an Indian tribe."); 42 U.S.C. § 8802(17) ("The term 'person' means any individual, company, cooperative, partnership, corporation, association, consortium, unincorporated organization, trust, estate, or any entity organized for a common business purpose, any State or local government (including any special purpose district or similar governmental unit) or any agency or instrumentality thereof, or any Indian tribe or tribal organization."); 29 C.F.R. § 37.4 ("Entity means any person, corporation, partnership, joint venture, sole proprietorship, unincorporated association, consortium, Indian tribe or tribal organization...."); 31 C.F.R. § 103.11(z) (defining "[p]erson" as "[a]n individual, a corporation, a partnership, a trust or estate, a joint stock company, an association,

a syndicate, joint venture, or other unincorporated organization or group, an Indian Tribe (as that term is defined in the Indian Gaming Regulatory Act), and all entities cognizable as legal personalities").

**11.** On the facts of this case, we decline American Vantage's invitation to follow *Gen. Ry. Signal Co. v. Corcoran,* 921 F.2d 700, 705 (7th Cir.1991) (reasoning that "dismissal should be sparingly used whenever it appears that a basis for federal jurisdiction in fact exists or may exist and can be stated by plaintiff") (quoting *Littleton v. Berbling,* 468 F.2d 389 (7th Cir.1972)). The district court, after dismissing American Vantage's claims the first time without prejudice, expressly invited the parties to offer a basis for establishing subject matter jurisdiction. For undetermined reasons, American Vantage chose to rest exclusively on diversity, raising many of the same arguments that the district court already had rejected and declining to raise federal question jurisdiction.