# UNITED STATES COURT OF APPEALS
# FIFTH CIRCUIT

_____

No. 01-31231
_____

RAYE ANN VARGAS,

                              Plaintiff - Appellee - Cross-Appellant,

versus

DONALD K. LEE; A.C. WRIGHT TRUCKING, INC.;
INSURANCE CORPORATION OF HANOVER,

                              Defendants - Appellants -
                              Cross-Appellees.

_____

Appeals from the United States District Court
For the Eastern District of Louisiana

_____

January 21, 2003

Before EMILIO M. GARZA and CLEMENT, Circuit Judges, and DAVIS[*], District Judge.

EMILIO M. GARZA, Circuit Judge:

Defendants Donald K. Lee, A.C. Wright Trucking, Inc. and Insurance Corporation of

Hanover appeal the judgment in favor of plaintiff Raye Ann Vargas. They contend that the district

_____

[*] District Judge of the Eastern District of Texas, sitting by designation.

court abused its discretion in admitting expert testimony regarding fibromyalgia syndrome.[1]  This dispute arises out of an accident in which a tractor trailer operated by Donald K. Lee, a resident of Mississippi, collided with a vehicle driven by plaintiff Raye Ann Vargas, a resident of Louisiana.  At the time of the accident, Lee was employed by A.C. Wright Trucking, Inc. ("A.C. Wright"), a Mississippi corporation.  A.C. Wright's automobile liability insurance carrier was Insurance Corporation of Hanover ("Hanover"), a California corporation.  Vargas filed suit against Lee, A.C. Wright and Hanover in Louisiana state court.  Following removal, the defendants stipulated to liability, leaving damages as the sole issue.  After conducting a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the district court admitted the expert testimony of Dr. Edward M. Gaber, who opined that the accident caused Vargas to develop symptoms of fibromyalgia syndrome.[2]  The jury ultimately awarded Vargas $216,200 in damages and the district court entered a judgment in that amount, plus legal interest from the date of judicial

---

[1] In addition, the parties challenge the district court's failure to alter the amount of the jury's damage award despite the fact that these objections were not raised below.  "Failure to challenge the sufficiency of the evidence in a motion for a new trial or a motion for judgment notwithstanding the verdict will result in waiver of the issue on appeal . . . except in exceptional circumstances . . . ." *Pounds Photographic Labs, Inc. v. Noritsu Am. Corp.*, 818 F.2d 1219, 1226 (5th Cir. 1987) (citation omitted); *Bueno v. City of Donna*, 714 F.3d 484, 493-94 (5th Cir. 1983) ("It is well-established that there can be no appellate review of allegedly excessive or inadequate damages if the trial court was not given the opportunity to exercise its discretion in a motion for a new trial.").  "Exceptional circumstances are present when a pure question of law is involved and the asserted error is so obvious that the failure to consider it would result in a miscarriage of justice." *Pounds Photographic Labs, Inc.*, 818 F.2d at 1226.  Because none of the parties have demonstrated that such circumstances exist, we decline to consider their arguments regarding the amount of the judgment.

[2] In a prior decision, we described fibromyalgia syndrome as "an elusive but debilitating affliction" that "is characterized by complaints of generalized pain, poor sleep, an inability to concentrate, and chronic fatigue." *Black v. Food Lion, Inc.*, 171 F.3d 308, 309 (5th Cir. 1999); *see also* STEDMAN'S MEDICAL DICTIONARY 671 (27th ed. 2000) (defining fibromyalgia as "[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause.").

demand until paid and all costs of the litigation. We vacate the judgment and remand for recalculation of damages.

Before expert testimony can be admitted under Federal Rule of Evidence 702, the district court must conduct a preliminary inquiry to ensure that the testimony is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) ("[E]xpert testimony is admissible only if it is both relevant and reliable."). The objective of this gatekeeping requirement "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. In *Daubert*, the Supreme Court set forth an illustrative, non-exhaustive list of factors that may be considered by the district court when determining whether the expert testimony is sufficiently reliable. These factors include whether the theory or technique that forms the basis of the expert's testimony: (1) can be and has been tested; (2) has been subjected to peer review and publication; (3) has a high known or potential rate of error and standards controlling its operation; and (4) is generally accepted within the relevant scientific or technical community. *Daubert*, 509 U.S. at 593-94. "[W]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho*, 526 U.S. at 153. We therefore review the district court's admission or exclusion of expert testimony for an abuse of discretion. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 274 (5th Cir. 1998) (citing *Gen. Elect. Co. v. Joiner*, 522 U.S. 136 (1997)).

We previously addressed the question of whether expert testimony regarding the causation of fibromyalgia syndrome by traumatic injury was sufficiently reliable to be admitted in *Black v. Food*

*Lion, Inc.*, 171 F.3d 308 (5th Cir. 1999). In that case, the testimony of the plaintiff's expert, who hypothesized that the plaintiff's fibromyalgia was caused by a fall in the defendant's store, was admitted by the magistrate judge and a judgment was ultimately entered in the plaintiff's favor. *Black*, 171 F.3d at 309-10. On appeal, we observed that "[w]hile the medical profession has made significant advances in the diagnosis and treatment of fibromyalgia, experts have recognized that the evidence that trauma actually causes fibromyalgia is 'insufficient to establish causal relationships.'" *Id*. at 312 (quoting Frederick Wolfe, *The Fibromyalgia Syndrome: A Consensus Report on Fibromyalgia and Disability*, 23:3 J. OF RHEUMATOLOGY 534, 534 (1996)). After reviewing the materials submitted in support of the expert testimony, we determined that the theory that trauma causes fibromyalgia did not satisfy the *Daubert* factors or any other standard of reliability. *See id*. at 313 (stating that "[plaintiff's expert's] theory of causation, which has not been verified or generally accepted, also has no known potential rate of error"). We concluded that "neither [plaintiff's expert] nor medical science knows the exact process that results in fibromyalgia or the factors that trigger the process. Absent these critical scientific predicates, for which there is no proof in the record, no scientifically reliable conclusion on causation can be drawn." *Id*. at 314. We therefore held that the admission of the expert testimony constituted an abuse of discretion and remanded the case for recalculation of damages. *Id*. at 314-15.

The question now before us is whether scientific understanding of fibromyalgia syndrome has progressed sufficiently since our decision in *Black* to permit the admission of Dr. Gaber's testimony.[3]

---

[3] In an attempt to avoid *Black*, which applied the law of Texas, Vargas makes much of the fact that, under Louisiana law, "[a] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards . . . ." *Housley v. Cerise*, 579 So.2d 973, 980 (La. 1991) (quoting *Lukas v. Ins. Co. of*

Based on the evidence in the record, we conclude that it has not. In support of Dr. Gaber's testimony, the plaintiff produced only two studies, neither of which indicates that medical science has determined with any degree of reliability that trauma causes fibromyalgia.[4] Indeed, the more recent of the two studies)) a survey concluding that some groups of Canadian physicians were more likely than others to accept a diagnosis of fibromyalgia following a patient's involvement in a car accident)) expressly disavowed this conclusion. *See* Kevin P. White, et al., *Perspectives on Posttraumatic Fibromyalgia: A Random Survey of Canadian General Practitioners, Orthopedists, Physiatrists, and Rheumatologists*, 27:3 J. OF RHEUMATOLOGY 790, 794 (2000) ("White Study") ("We emphasize . . . that our study was merely a survey of physician opinions about the association between trauma and [fibromyalgia]; whether these opinions are valid needs to be determined by further study within cohorts of individuals with [fibromyalgia]. To date, the arguments both for and against a causal role of trauma in [fibromyalgia] are weak.").

The second of the studies presented by plaintiff examined the incidence of fibromyalgia syndrome in a group of Israeli patients who had suffered injuries to the neck and the lower

---

*N. Am.*, 342 So.2d 591 (La. 1977)). This distinction is meaningless for our purposes, however, because the presumption applies only where "medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition." *Id*.; *see Lightell v. Couvillion*, 757 So.2d 39, 42 (La. Ct. App. 2000) (refusing to apply presumption of causation because "[u]nlike the plaintiffs in *Housley*, the plaintiffs herein did not present evidence that showed a possible connection between the impact and their subsequent injuries"). Thus, Louisiana law does not, as Vargas contends, eliminate the need for medical evidence establishing a causal connection between her medical condition and the accident.

[4] We recognize that, because the defendants' motion in limine objecting to Dr. Gaber's testimony was filed only days before trial, the plaintiff and the district court had little time to prepare for the *Daubert* hearing, which was conducted at trial outside the presence of the jury. The defendants' conduct, however, cannot alter the evidentiary standard for the admission of expert testimony under Rule 702.

extremities. *See* Dan Buskila, et al., *Increased Rates of Fibromyalgia Following Cervical Spine Injury*, 40:3 ARTHRITIS & RHEUMATISM 446, 446 (1997) ("Buskila Study") (concluding that "[fibromyalgia syndrome] was 13 times more frequent following neck injury than following lower extremity injury"). Although the Buskila Study stated that "trauma may cause [fibromyalgia syndrome]," it also acknowledged that "[t]he present data in the literature are insufficient to indicate whether causal relationships exist between trauma and [fibromyalgia]" and called for further studies "addressing the issue of trauma (especially, neck trauma) and [fibromyalgia]." *Id.* at 451; *see also* White Study at 790-91 (stating that further studies are required to verify the Buskila Study's statement that trauma may cause fibromyalgia). These studies only bolster our conclusion in *Black* that expert testimony on the causation of fibromyalgia syndrome by trauma is not sufficiently reliable to be admitted under Rule 702.[5]

The district court also relied upon Dr. Gaber's testimony during the *Daubert* hearing that a high percentage of his fibromyalgia patients stated that their symptoms appeared following a traumatic injury. This observation, however, is not sufficient to demonstrate the reliability of Dr.

---

[5] The plaintiff also produced two opinion pieces, neither of which establishes the reliability of Dr. Gaber's testimony. The first of these))an editorial arguing that fibromyalgia syndrome can legitimately render a patient disabled))refers to the "apparent initiation of [fibromyalgia] by a traumatic incident, such as a road traffic accident." Robert M. Bennett, Editorial, *Disabling Fibromyalgia: Appearance Versus Reality*, 20:11 J. OF RHEUMATOLOGY 1821, 1821 (1993). While possibly relevant to *Daubert*'s general acceptance factor, this statement of opinion is insufficient, by itself, to establish the reliability of Dr. Gaber's testimony. The second piece is a commentary that refers to the results of a 1989 study in which approximately seventy percent of the 238 chronic pain patients studied attributed the beginning of their chronic pain to some form of trauma. *See* David A. Fishbain & Hubert L. Rosomoff, *Posttraumatic Fibromyalgia at Pain Facilities Versus Rheumatologists' Offices, A Commentary*, 77:6 AM. J. OF PHYSICAL MED. & REHABILITATION 562, 562 (1998). Even if we excuse the plaintiff's failure to produce the study itself, patient attribution does not establish causation. Moreover, many of the study participants apparently did not satisfy the criteria for a fibromyalgia diagnosis. *See id.* (noting that "these [chronic pain patients] do not fulfill the fibromyalgia criteria for the required number of tender points").

Gaber's theory that fibromyalgia is *caused* by trauma, particularly in light of the lack of scientific support for that conclusion.

Because nothing in the record alters the outcome reached in *Black*, we conclude that the admission of Dr. Gaber's testimony was an abuse of discretion. We do not, however, purport to hold that trauma does not cause fibromyalgia syndrome or that the admission of expert testimony on that subject is permanently foreclosed. Medical science may someday determine with sufficient reliability that such a causal relationship exists. As the Supreme Court recognized in *Daubert*: "[I]n practice, a gatekeeping role for the judge, no matter how flexible, inevitably on occasion will prevent the jury from learning of authentic insights and innovations. That, nevertheless, is the balance that is struck by Rules of Evidence designed not for the exhaustive search for cosmic understanding but for the particularized resolution of legal disputes." 509 U.S. at 597 (footnote omitted).[6]

We VACATE the judgment and REMAND for recalculation of damages consistent with this opinion.

---

[6] We hold that, by raising it for the first time at oral argument, the plaintiff has waived her argument that the judgment is supported by sufficient evidence regardless of the admissibility of Dr. Gaber's testimony. *See Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 562 n.2 (5th Cir. 2002) ("Needless to say, we do not generally consider point s raised for the first time at oral argument.").