*96 ORDER DENYING MOTION IN LIMINE; AND
ORDER DETERMINING TRIBAL COURT ORDINANCE CAP ON NON-ECONOMIC DAMAGES INAPPLICABLE

(Opinion)

KATHARINE ENGLISH, Chief Judge.
A. INTRODUCTION; BACKGROUND
This case involves a personal injury action brought by the Plaintiff, Kathy Kalan-tari, against the Defendant Spirit Mountain Gaming, Inc., dba Spirit Mountain Casino, that arises out of a collision between Plaintiff and a casino employee on February 13, 2002. Plaintiff alleges that she was injured as a result of the collision, and that her injuries are a foreseeable result of Defendant’s acts or omissions. In her Fourth Amended Complaint, she seeks damages for her reasonable and necessary medical expenses, for other economic damages, and, as is particularly pertinent here, for non-economic damages in the amount of $800,000.,
The ease is currently before the Court in a pre-trial posture for resolution of two issues: (1) whether Plaintiff can seek non-economic damages in excess of the $100,-000-per-injury cap on damages for “pain and suffering * * * and like claims” that is set out In the Tribal Tort Claims Ordinance section 255.6(h), and (2) whether the Court should grant Defendant’s Motion In Limine seeking to preclude Plaintiff from offering expert testimony supporting her claim that her fibromyalgia was triggered by the accident at the casino. For the reasons that follow, the Court concludes that the $100,000-per-injury cap does not apply, and that Defendant’s Motion In Li-mine should be denied. The Court emphasizes at the outset, and will emphasize again later in this Opinion, that neither of those rulings should be viewed as a forecast of the Court’s ultimate decision regarding the merits of this case if it proceeds to trial. In particular, the fact that the Court denies Defendant’s Motion In Limine does not mean that the Court has decided whether there is, in fact, a legally-sufficient causal link between the accident and Plaintiff’s current disability, if any, including fibromyalgia.
In this Opinion, the Court will first address whether Plaintiff can seek more than $100,000 in non-economic damages and then will turn to the evidentiary issue.
B. AMOUNT OF NON-ECONOMIC DAMAGES PLAINTIFF MAY SEEK
1. The issue and the parties’ contentions
As noted, Plaintiffs latest complaint seeks $800,000 in non-economic damages. Defendant contends that she can seek no more than the $100,000-per-injury limit on certain damages that is set out in the Tort Claims Ordinance (TCO). That provision, section 255.6(h), states that:
[n]o award, judgment or order shall be made under this Ordinance for pain and suffering or mental anguish and suffering or like claims in an amount greater than $100,000 for each injury.
In Defendant’s view, this provision is determinative. Under it, Plaintiff can seek *97 no more than $100,000 for her non-eeo-nomic damages.
Plaintiffs response is based primarily on a provision of the Compact for Class III gaming entered into between the Tribe and the State of Oregon. Section 8(G) of the Compact requires the Tribe to
maintain public liability insurance with limits of not less than $250,000 for one person and $2,000,000 for any one occurrence for any bodily injury or property damage. The Tribe’s insurance policy shall have an endorsement providing that the insurer may not invoke Tribal sovereign immunity up to the limits of the policy.
(Emphasis added). In compliance with the Compact, the Tribe has entered into a general liability insurance policy with Zurich-American Insurance Group with limits of $1,000,000 per person.
Plaintiff argues that “Section 8(G) of the Compact is an express waiver of [Tribal] sovereign immunity that governs [her] claims,” and that Defendant “has waived Tribal sovereign immunity up to the limits of its Zurieh-American policy.” Although Plaintiff gave the notice required by the TCO, she asserts that she did so only out of an abundance of caution and that she relies on the Compact, not the Ordinance, as the source of the waiver of sovereign immunity on which she relies. She notes that the Compact predates the TCO, that it was renewed after the enactment of the TCO, but with no change to section 8(G), and she contends that the Compact should govern in any event because it is the more specific provision.[1]
Defendant insists that section 8(G) of the Compact does not amount to the required explicit waiver of the Tribe’s sovereign immunity. Defendant underscores the use of the word “insurer” in the Compact provision, which requires the Tribe’s insurance policy to have an endorsement providing “that the insurer may not invoke Tribal sovereign immunity up to the limits of the policy.” Defendant also contends that the intent of section 8(G) was merely to protect the state, its employees and agents from suit. Defendant points to the last sentence of section 8(G), which immediately follows the sentence providing for waiver of sovereign immunity. That sentence reads:
The Tribe shall indemnify, defend and hold harmless the State, its officers, directors, employees and agents from and against any claims, damages, losses or expenses asserted against or suffered or incurred by the State or its officers, directors, employees and agents (except as may be the result of their own negligence) based upon or arising out of any bodily injury or property damage resulting or claimed to result in whole or in part from any act or omission of the Tribe relating to the inspection of any *98 gaming or gaming related facility pursuant to this Compact.
To buttress that point, Defendant also relies on section 13(E) of the Compact which states that it
is exclusively for the benefit of and governs only the respective authorities of and the relations between the Tribe and the State. Nothing in this Compact shall be construed as creating or granting any rights to any third party, or as establishing any objection or defense for any third party to any charge, offense or prosecution.
(Emphasis added). Given that language, Defendant contends that Plaintiff cannot rely on any right created by the Compact.
In response to Defendant’s argument based on the supposed intent of section 8(G) and of the Compact as a whole, one of Plaintiffs attorneys submitted a letter to the Court, stating that the attorney had spoken with an assistant attorney general for the State of Oregon who affirmed that the intent of insurance requirements such as that in section 8(G) of this Compact was, at least in part, to provide coverage to members of the public injured at a casino. Defendant recently responded to that letter. According to Defendant, “[Qssues relating to the accuracy of [Plaintiffs attorney’s] interpretation of his conversation with [the assistant attorney general] aside, her purported understanding of the State’s intent with regard to the subject insurance provision fails to speak to the primary focus of [the] debate.”
Regardless of the State’s intent upon entering a contract with a sovereign nation such as the Confederated Tribes of the Grand Ronde Community of Oregon, without express and unequivocal language expressing the Tribe’s intent to waive its sovereign immunity, there can be no waiver. See Kiowa. Tribe of Oklahoma v. Manufacturing Technologies, Inc., [523 U.S. 751], 118 S.Ct. 1700, [140 L.Ed.2d 981] (1998). There is no express waiver of the Tribe’s sovereign immunity in the subject Compact.
Defendant suggests that if Plaintiff believes the Tribe has breached its agreement with the state regarding the liability-insurance provision, “she should raise that issue with the State.”
2. Discussion
If the TCO limit on damages for “pain and suffering” and the like applies, then the applicable limit is $100,000 “for each injury.” On the other hand, if section 8(G) of the Compact is an express waiver of sovereign immunity, then the $1,000,000 limit of the Tribe’s liability insurance policy applies. The issue thus becomes whether the limited waiver of sovereign immunity set out in the TCO applies, or whether section 8(G) amounts to a more expansive waiver that governs here. In resolving that issue, the Court begins with general principles governing the waiver of Tribal sovereign immunity.
As the court noted in Krystal Energy v. Navajo Nation, 357 F.3d 1055 (9th Cir Feb. 10, 2004) (slip op. 1956),
Immunity from suit has been recognized by the courts of this country as integral to the sovereignty and self-governance of Indian tribes. Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751, 756-58, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998) (“Kioiua Tribe”). See also Okla. Tax Comm. v. Citizen Band of Potawatomi Indian Tribe of Okla., 498 U.S. 505, 509, [111 S.Ct. 905, 112 L.Ed.2d 1112] (1991) (“Potawatomi”) (recognizing the sovereign immunity of Indian tribes absent a clear waiver by the tribe or congressional abrogation); Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Eng’g, 476 U.S. 877, 890, [106 S.Ct. 2305, 90 *99 L,Ed.2d 881] (1986) (“The common law sovereign immunity possessed by the tribe is a necessary corollary to Indian sovereignty and self-governance”); Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, [98 S.Ct. 1670, 56 L.Ed.2d 106] (1978) (“Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers”). Tribal sovereignty is not absolute, however.
Instead, “[i]t is well-settled that ‘as a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity.’ ” Sanderlin v. Seminole Tribe of Florida, 243 F.3d 1282, 1285 (11th Cir.2001), citing Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998), Oklahoma Tax Comm’n v. Citizen Band Potawatomi Tribe, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991) (“Suits against Indian tribes are [ ] barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation”), and State of Florida v. Seminole Tribe, 181 F.3d 1237, 1241 (11th Cir.1999) (“A suit against an Indian tribe* * * is barred unless the tribe clearly waived its immunity or Congress expressly abrogated that immunity by authorizing the suit”).
In this case, no one contends that Congress abrogated Tribal sovereign immunity in the Indian Gaming Regulatory Act (IGRA), which provides the statutory authority for the Class III Gaming Compact entered into between the Tribe and the state. See also Hartman v. Kickapoo Tribe Gaming Com’n, 319 F.3d 1230, 1232-33 (10th Cir.2003) (“nowhere does IGRA expressly authorize private individuals to sue directly under the statute;” therefore, there is no private right of action under the statute); Hein v. Capitan Grande Band of Diegueno Mission Indians, 201 F.3d 1256, 1260 (9th Cir.2000) (same); Florida v. Seminole Tribe of Florida., 181 F.3d at 1242 (same). The issue thus becomes whether the Tribe waived its sovereign immunity in section 8(G) of the Compact.
“The Supreme Court has made it plain that waivers of Tribal sovereign immunity cannot be implied on the basis of a tribe’s actions, but must be unequivocally expressed.” Florida v. Seminole Tribe, 181 F.3d at 1243 (footnote, citing numerous other decisions, omitted). Moreover, a tribe does not lose its sovereign immunity merely because it is engaged in commercial enterprises, as opposed to governmental functions. American Vantage v. Table Mountain Rancheria, 292 F.3d 1091, 1100 (9th Cir.2002), citing Kiowa Tribe. See also Sac and Fox Nation v. Hanson, 47 F.3d 1061, 1065 (10th Cir.1995). And that result follows even though it may seem unfair in some instances to unsuspecting commercial partners or tort victims, id., and even though as one prominent jurist has suggested that, in a commercial context, “the only purpose that a requirement of a clear statement [of waiver] could serve would be the admittedly, perhaps archaically, paternalistic purpose of protecting the tribe against being tricked by a contractor into surrendering a valuable right for insufficient consideration.” Sokaogon Gaming Enterp. v. Tushie-Montgomery Assoc., 86 F.3d 656, 659-60 (7th Cir.l99tí)(Posner, C.J.)[2]
*100 Although it is easy to state the requirement that a waiver of Tribal sovereign immunity must be express, it is not necessarily easy to apply that rule. That is, “the line between explicit and implicit waivers [can be] unclear,” Sokaogon Gaming, 86 F.3d at 660, and different courts have reached different results when considering the same or very similar language. See, e.g,, Rosebud Sioux Tribe v. Val-U Construction Co. of South Dakota, Inc., 50 F.3d 560 (8th Cir.1995), and Pan American Co. v. Sycuan Band of Mission Indians, 884 F.2d 416 (9th Cir.1989) (reaching opposite results regarding whether arbitration clause effects waiver).
With those general principles in mind, this Court now turns to applying those principles to the Compact and particularly to section 8(G). “‘A tribe may waive its sovereign immunity by contract.’ ” American Vantage v. Table Mountain Rancheria, 292 F.3d 1091, 1099 (9th Cir.2002), quoting William C. Canby, Jr., American Indian Law 93 (3d ed 1998). And a compact entered into between a tribe and a state pursuant to IGRA is a contract. Gallegos v. Pueblo of Tesuque, 132 N.M. 207, 46 P.3d 668, 679 (2002), citing Texas v. New Mexico, 482 U.S. 124, 128, 107 S.Ct. 2279, 96 L.Ed.2d 105 (1987), and Confederated Tribes of the Chehalis Reservation v. Johnson, 135 Wash.2d 734, 958 P.2d 260, 267 (1998). Thus, the problem reduces to applying principles of contract interpretation and principles governing the waiver of Tribal sovereign immunity to this Compact and specifically to section 8(G).
To reiterate, section 8(G) requires the Tribe to “maintain public liability insurance with limits of not less than $250,000 for one person and $2,000,000 for any one occurrence for any bodily injury or property damage.” In conformance with this provision, the Tribe has obtained liability insurance providing coverage up to $1,000,000 per person. Section 8(G) then provides that “[t]he Tribe’s insurance policy shall have an endorsement providing that the insurer may not invoke Tribal sovereign immunity up to the limits of the policy.”
There seems to be little dispute that if that last sentence included the term “the insured,” either in addition to or in lieu of “the insurer,” and if the next sentence of the provision were deleted, that the Tribe would have waived its sovereign immunity up to the policy limits. Plaintiff has cited a case to the Court holding as much. Jones v. Chitimacho. Tribe of Louisiana, No. CV-94-0035 (Chitimacha Ct App 1996).[3] And Defendant does not seem to contest the proposition that if the Compact provision said that “the insured” could not invoke sovereign immunity that waiver would be sufficient. Instead, Defendant focuses on the use of the term “the insurer,” on the intent to protect the state only, which it derives from the final sentence of section 8(G), and on section 13(E) of the Compact, which provides that the Compact is for the benefit of the Tribe and the state only. The issue thus reduces to whether the use of the term “the insurer,” rather than “the insured,” indicates that what would otherwise amount to an express waiver of sovereign immunity is not suffi- *101 dent, whether the final sentence of the provision signals an intent to waive sovereign immunity only when the state or its agents are involved, and to the import of section 13(E).
Defendant’s reliance on the use of “the insurer” in section 8(G) has some textual appeal. After all, the provision presumably could have, but did not, include the term “the insured.” But this Court rejects that reading of the Compact provision because it would render it meaningless. The “insurer,” of course, has no sovereign immunity to waive, so reading the provision as Defendant does would render it nugatory. And, even setting that problem aside, the provision would still remain meaningless and unenforceable. Because there is no privity between the insurer of an allegedly negligent Defendant and an injured tort victim, it appears unlikely that the victim could sue the insurer directly. See Romero v. Pueblo of Sandia/Sandia Casino, 134 N.M. 553, 80 P.3d 490, 492 (2003) (noting that is the general rule). Furthermore, even if a tort victim could sue the insurer directly, it appears likely that the tribe would be an indispensable party, which, if the tribe had not waived its sovereign immunity, could not be joined. See Gallegos, 46 P.3d at 681 (tribe is indispensable party in action brought against insurer).
Thus, for a variety of reasons, placing too much emphasis on the term “the insurer,” as used in section 8(G), renders the waiver provision meaningless and unenforceable. The insurer would merely promise not to invoke sovereign immunity it does not have; in all likelihood the insurer could not be sued directly in any event; and, even if it could, the Tribe probably would be an indispensable party that could not be joined because only “the insurer” and not the Tribe had waived its sovereign immunity. Such a Kafka-esque, Catch 22, result should be avoided, if at all possible. And, here it is possible. Because “the insurer” has no sovereign immunity to waive, and because section 8(G) should not be read into oblivion, the obvious intent of section 8(G) had to be to waive the Tribe’s sovereign immunity. The Red Queen might disagree, but this Court has no eause to chase the rabbit down his hole.
In reaching this conclusion, the Court is mindful of the fact that waivers of Tribal sovereign immunity must be express and may not be implied from conduct. Sanderlin v, Seminole Tribe, 243 F.3d at 1286. On the other hand, no “magic words” are required to effect an express waiver of Tribal sovereign immunity. Ninigret Development v. Narragansett Indian, 207 F.3d 21, 31 (1st Cir.2000), citing Rosebud, Sioux Tribe v. Val-U Const. Co., 50 F.3d 560, 563 (8th Cir.1995). Here, the waiver is express and clear. The insurer has no sovereign immunity to waive; the Tribe does: the only not-nonsensical reading of section 8(G) is that the Tribe has waived its sovereign immunity when sued under the insurance policy it is obliged by the Compact to obtain.
The question remains, however, whether section 8(G) was intended to protect only the state and its agents and employees, as Defendant contends. Defendant relies on the final sentence of section 8(G), which requires the Tribe to indemnify and hold harmless the state, “its officers, directors, employees and agents from any claims, damages, losses or expenses asserted against or suffered or incurred” by them “claimed to result in whole or in part from any act or omission of the Tribe relating to the inspection of any gaming or gaming related facility pursuant to th[e] Compact.” That sentence undoubtedly indicates that one purpose of section 8(G) was to indemnify and protect the state. But the sentence simply does not say that is the sole *102 purpose of the provision, and it does not serve to cancel out the broader language of the first two sections of the provision, which require the Tribe to obtain “public liability insurance” with certain minimum limits and require it not to invoke Tribal sovereign immunity up to the policy limits. If the provision had been intended to be limited in the way Defendant suggests, it would have been easy enough to have said so. The Court declines to read into the provision a limitation that is not there, and that seems to conflict with much of the provision.[4]
Finally, Defendant relies on section 13(E), which provides that the Compact “is exclusively for the benefit of and governs only the respective authorities of and the relations between the Tribe and the State” and that “[njothing in th[e] Compact shall be construed as creating or granting any rights to any third party, or as establishing any objection or defense for any third party to any charge, offense or prosecution.” Unambiguously, that provision means that the Compact does not create or grant any right to anyone, other than the Tribe and the state. The flaw in Defendant’s argument, however, is that Plaintiff is not claiming any right under the Compact. Instead, Plaintiff is relying on the waiver of Tribal sovereign immunity found in section 8(G). Plaintiff need not have been a party to or an intended beneficiary of that waiver in order to rely on it. It is the Tribe, and the Tribe only, that can waive its sovereign immunity, and if the Tribe waives its immunity, a Plaintiff need not have had any part in the document that effected that waiver.
Thus, the Court concludes that the Tribe waived its sovereign immunity in section 8(G) of the Compact—any other reading of it deprives it of meaning and effect—that the intent was not merely to protect the state, and that nothing in section 13(E) alters those conclusions. Therefore, Plaintiff may seek more than $100,000 in non-economic damages in this ease.
C. ADMISSIBILITY OF EXPERT TESTIMONY INDICATING A CAUSAL LINK BETWEEN PLAINTIFF’S INJURY AND FIBRO-MYALGIA
1. The issue and the parties’ contentions
Plaintiff contends that she was injured as a result of the accident and that she has fibromyalgia as a result. Defendant has moved in limine to exclude expert testimony “concerning any theory on the causal link between trauma and the fibromyal-gia.” The parties have submitted voluminous written materials regarding this issue and the Court held a Rule 104 hearing at which testimony also was produced.[5] In essence, Defendant contends that evidence of any causal link between trauma and fibromyalgia is too speculative and unprov *103 en to justify admission of Plaintiffs proffered evidence. Plaintiff admits that some courts have agreed with the position advanced by Defendant, but she asserts that a growing and prestigious group of experts and a growing body of evidence supports her claim for the admission of this evidence. For the reasons that follow, the Court agrees with Plaintiff. The Court cautions, however, that this is a pretrial ruling on the admissibility of evidence, which should not be viewed as forecast of how the Court might rule on the merits, if a trial is held.
2. Discussion
In deciding whether to admit expert testimony, the issue focuses on relevancy and reliability. “In Daubert [v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)] th[e] Court held that Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to ‘ensure that any and all scientific testimony * * * is not only relevant, but reliable.’ ” Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).[6] In making that initial “gatekeeping” judgment, a court may consider factors such as (1) whether a theory or technique can be and has been tested, (2) whether it has been subjected to peer review and publication, (3) whether there is high rate of error with regard to any particular technique and whether there are standards to guide its application, and (4) whether the technique or theory enjoys general acceptance within the relevant scientific community. Kumho Tire, 526 U.S. at 149-50, 119 S.Ct. 1167, citing Daubert, 509 U.S. at 592-94, 113 S.Ct. 2786. In a Rule 104 context, “the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.” Advisory Committee Note to 2000 Amendment to FRE 702 (reprinted in Charles A. Wright and Victor James Gold, 29 Federal Practice arid Procedure, 2003 pocket part at 21), citing Bourjaily v. United States, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).
Here, there is little need to detail the mountains of competing evidence produced by both parties. Suffice it to say that, although disagreement amongst ex-pérts at least simmers, if not perhaps boils, the Court can readily conclude that Plaintiff has met her burden of showing by a preponderance of the evidence that all the Daubert factors have been satisfied. The theory that there is a causal link between trauma and fibromyalgia has been tested, albeit not to every expert’s satisfaction, the theory has been subjected to peer review and publication, although no unanimous consensus has been reached, there are standards controlling the diagnosis of fibromyalgia, objective evidence of its existence and at least some epidemiological support for the claimed link between trauma and the condition, and there is at least some, admittedly not universal, support for the idea that many, if not most, experts in the field believe that trauma is causally *104 related to the development of fibromyalgia. Thus, Plaintiffs evidence passes the Daubed test.
Concededly, the precise mechanism by which trauma may cause fibromyalgia may not be known but, to borrow from an order written by Washington state judge William L. Downing, in a decision submitted by Plaintiff, the Court might hear similar admissions from experts in cases “dealing with cancers, dysphoria, carpal tunnel syndrome and bunions.” Strilaeff v. Kim, No. 00-13 2-28026-2 SEA, 11/14/02 Order on Reconsideration. Admissibility of scientific evidence need not await the discovery of toe precise physiological or biochemical mechanism that links cause and effect.
Admittedly also, Defendant has some case law support for its position. See Vargas v. Lee, 317 F.3d 498 (5th Cir.2003) (evidence of link between trauma and fi-bromyalgia not admissible under Daubert ); Black v. Food Lion, Inc,, 171 F.3d 308 (5th Cir.1999) (same). But so does Plaintiff. Reichert v. Phipps, 84 P.3d 353 (Wyo.2004) (reaching the opposite conclusion). The Fifth Circuit eases on which Defendant relies may be distinguishable— they both were decided after trial and after verdicts in Plaintiffs favor and the record in each case was less extensive and more outdated than the record produced here. More profoundly, however, the Court disagrees with them. In this Court’s view, those decisions narrow the gate too much when performing the Court’s “gatekeeping” function. Particularly in this case, where any trial would be to the Court, this Court believes that it is more advisable to let the evidence in and to allow the Court, as the trier of fact, to separate the reliable wheat from the speculative chaff, if any. Some of the judicial caution about admitting questionable scientific or other technical evidence stems from concern that jurors will be overly impressed by and unable to critically evaluate such evidence. Whatever the merits of that view may be when juries are involved, the concern is considerably reduced when the Court is the trier of fact.
Thus, the Court denies Defendant’s Motion In Limine. Plaintiffs evidence may be admitted at trial. The Court emphasizes again, however, that its ruling on admissibility should not be confused with any decision that might follow a trial. “Admissibility is just the first hurdle. Once admitted, expert testimony is subject to all the traditional means of testing evidence.” Reichert, 84 P.3d at 364,
D. CONCLUSION
For all the reasons given above, the Tribal Court Ordinance limit on non-eeo-nomic damages does not apply in this case, and Defendant’s Motion In Limine is denied.

. Plaintiff also proffers other claims, including the claim that she has suffered multiple “injuries,” and that non-economic damages are not necessarily equivalent to the damages for “pain and suffering or mental anguish and suffering or like claims” that are capped in section 255.6(h) of the TCO. Because the Court concludes that the Compact limit governs here, it finds it unnecessary to reach or resolve those issues. Plaintiff also notes, correctly, that at present she is simply seeking damages and that the TCO limit applies to awards, judgments or orders. But that point, while technically correct, would—if Defendant is right about the applicability of the $ 100,000 TCO limit—-represent nothing more than a pyrrhic victory and serve to postpone the inevitable. Although the Court could defer its ruling on this basis—since it is not clear now whether Plaintiff will be able to prove any compensable damages for which Defendant is responsible—the Court elects to decide the issue now, in part to assist the parties and the settlement judge in settlement discussions that the Court knows are on-going.

. It also has been suggested by Posner, and others, that "the harder it is for a tribe to waive its sovereign immunity the harder it is for it to make advantageous business transactions.” Sokaogon Gaming Enterp., 86 F.3d at 660, citing Amelia A. Fogelman, Note: "Sovereign Immunity of Indian Tribes: A Proposal for Statutory Waiver for Tribal Business," 79 Va L Rev 1345, 1364-65 (1993). Although those policy issues are interesting ones, the *100 Court does not base its decision in this case on them.

. Plaintiff also claims to have found and to rely on a case where the Compact stated that ‘‘the insured” could not invoke Tribal sovereign immunity. Aasen-Robles v. Lac Courte Oreilles Band of Lake Superior Chippewa Indians, 267 Wis.2d 333, 671 N.W.2d 709 (2003). However, although the Compact language in that case may be the same, the issues are so different that the Court has not found the case to be instructive.

. As noted above, the parties disagree about whether the Court should rely on Plaintiff's attorney’s representation as to what the state intended when it agreed to section 8(G) and as to the significance, if any, of the state’s intent. Given the Court's disposition, it need not resolve that dispute.

. FRE 104(a) provides that “[pjreliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the Court, subject to the provisions of subsection (b) [dealing with conditional relevance]. In making its determination it is not bound by the rules of evidence except those with respect to privilege.” This Court has adopted as the Tribal code of evidence the federal rules, with certain exceptions not pertinent here, and subject to the exercise of the Court's discretion to modify the application of the rules as necessary and to its obligation to interpret the rules in a manner consistent with Tribal law.

. Rule 702, as amended in 2000, reads: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determíne a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.” Plaintiff contends that the 2000 amendment did not “codify" Daubert, and she urges this Court to conclude that Oregon state court decisions interpreting OEC 702 "provide the best guidance for interpreting” the Tribal evidence code. This Court need not resolve either issue in this case.