[No. 24320-6-III.   Division Three.   March 28, 2006.]

ADAM GRANT ET AL., *Appellants*, v. GERTRUDE BOCCIA ET AL., *Respondents*.

*Steven P. Krafchick* (of *Krafchick Law Firm*) and *Charles K. Wiggins* (of *Wiggins & Masters, P.L.L.C.*), for appellants.

*Andrew B. Williams* and *James P. Richmond* (of *Law Offices of James P. Richmond*); *M. Colleen Barrett* (of *Barrett & Worden, P.S.*); *Charles E. Siljeg* and *William A. Olson* (of *Aiken, St. Louis & Siljeg, P.S.*); and *Robert C. Tenney*, for respondents.

¶1 KATO, C.J. — Adam and Tami Grant appeal the trial court's summary dismissal of their negligence suit. They contend the court erred by excluding expert testimony that

Mr. Grant's fibromyalgia[1] was caused by an automobile accident and by dismissing their suit for lack of causation. We affirm.

¶2 On October 23, 1997, Gertrude Boccia collided with Mr. Grant's vehicle while she was changing lanes. The collision forced Mr. Grant's vehicle onto the curb. On October 9, 2000, the Grants sued Ms. Boccia, claiming the accident caused Mr. Grant's fibromyalgia.

¶3 On December 15, 2003, Ms. Boccia moved to exclude any expert medical testimony the trauma from the accident caused Mr. Grant's fibromyalgia. Ms. Boccia argued under *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), the proposition that trauma causes fibromyalgia is not generally accepted in the relevant scientific community and such testimony should be excluded. The court granted the motion and dismissed the lawsuit because the Grants could not otherwise prove causation. This appeal follows.

¶4 The Grants contend the court erred by excluding the expert opinion testimony that trauma causes fibromyalgia. *Id.* at 1014. A witness qualified as an expert may testify on the basis of "scientific, technical, or other specialized knowledge" if the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." ER 702. But the admission of novel scientific evidence involves two related inquiries: (1) whether the scientific principle or theory from which the testimony is derived has garnered general acceptance in the relevant scientific community under the *Frye* standard and (2) whether the expert testimony is properly admissible under ER 702. *See State v. Riker*, 123 Wn.2d 351, 359, 869 P.2d 43 (1994); *State v. Copeland*, 130 Wn.2d 244, 261, 922 P.2d 1304 (1996) (affirming Washington's adherence to *Frye* despite United States Supreme Court's adoption of a different test in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)); *see State v. Dunn*, 125 Wn. App. 582, 590, 105 P.3d 1022 (2005).

---

[1] Fibromyalgia is defined as "[c]hronic pain in muscles and soft tissues surrounding joints." TABER'S CYCLOPEDIC MEDICAL DICTIONARY 728 (17th ed. 1993).

■ ■ ¶5 In examining a *Frye* question, the court must determine: "(1) whether the underlying theory is generally accepted in the scientific community and (2) whether there are techniques, experiments, or studies utilizing that theory which are capable of producing reliable results and are generally accepted in the scientific community." *Riker*, 123 Wn.2d at 359. Under the *Frye* test, we do not determine if the scientific theory underlying the proposed testimony is correct. Rather, we must look to see whether the theory has achieved general acceptance in the appropriate scientific community. *Id.* at 359-60. If there is significant dispute in the relevant scientific community about the validity of the scientific theory, it may not be admitted. *State v. Cauthron*, 120 Wn.2d 879, 887, 846 P.2d 502 (1993), *overruled in part by State v. Buckner*, 133 Wn.2d 63, 941 P.2d 667 (1997).

■ ¶6 The review of a trial court's decision to admit or exclude novel scientific evidence is de novo. *Id.* A reviewing court will undertake a searching review that is not confined to the record and may involve consideration of scientific literature. *Copeland*, 130 Wn.2d at 255-56. "Decisions from other jurisdictions may be examined as well, but the relevant inquiry is the general acceptance by scientists, not by the courts." *Cauthron*, 120 Wn.2d at 888.

■ ■ ¶7 The Grants first contend the court erred in applying *Frye* because the doctrine is inapplicable here. They argue that because the experts' opinions were derived from accepted clinical methodologies consisting of common and well-accepted evidence to support a conclusion on causation, *Frye* has no application. Although the core concern of *Frye* is only whether the evidence being offered is based on established scientific methodology, the analysis requires both an accepted theory and a valid technique to implement that theory. *Cauthron*, 120 Wn.2d at 889. " '[T]he thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.' " *Id.* at 887 (quoting *Frye*, 293 F. at 1014).

¶8 Here, the Grants provided no evidence their experts' methodologies used to conclude trauma causes fibromyalgia were sufficiently established to have gained general acceptance. Indeed, the record reflects medical science is still unclear as to the processes that trigger fibromyalgia. The simple assertion that their experts' methodologies are common and well accepted to prove causation does not take their opinions outside the ambit of *Frye*. The "use of a general methodology cannot vindicate a conclusion for which there is no underlying medical support." *Black v. Food Lion, Inc.*, 171 F.3d 308, 314 (5th Cir. 1999).

¶9 The Grants next assert *Frye* is inapplicable because the theory that physical trauma causes fibromyalgia is not new or novel. "[E]vidence that does not involve new methods of proof or new scientific principles is not subject to the *Frye* test." *State v. Baity*, 140 Wn.2d 1, 10, 991 P.2d 1151 (2000). This is because full acceptance of a process in the relevant scientific community obviates the need for a *Frye* hearing. *State v. Russell*, 125 Wn.2d 24, 41, 882 P.2d 747 (1994), *cert. denied*, 514 U.S. 1129 (1995). But here, the record reflects there is no definitive acceptance as to the cause of fibromyalgia. The theory that fibromyalgia is caused by trauma is a new scientific principle subject to the *Frye* analysis.

¶10 Citing *Reese v. Stroh*, 128 Wn.2d 300, 907 P.2d 282 (1995), a medical malpractice case, the Grants also assert that expert opinion on the cause of a medical condition is not subject to the *Frye* test. Because their expert was offering testimony on causation, they argue *Frye* is inapplicable here.

¶11 In *Reese*, a doctor sought to exclude under *Frye* the patient's expert testimony that the doctor's failure to treat the patient with a specific drug therapy caused decreased lung capacity. *Id.* at 303-04. Our Supreme Court held *Frye* was inapplicable because the doctor did not argue that the theory or methodology involved in the therapy lacked acceptance in the scientific community. *Id.* at 307. But in *Ruff v. Department of Labor & Industries*, 107 Wn. App.

289, 301, 28 P.3d 1 (2001), Division One was confronted with the issue whether an expert could testify that odor-level chemicals present during a remodeling job caused the plaintiff's porphyria—a rare, mostly hereditary disorder of blood enzymes. The plaintiff cited *Reese* and claimed the expert's causation testimony was not subject to *Frye*. *Id.* The *Ruff* court distinguished *Reese* and held that because the defendants argued the plaintiff's theory lacked general acceptance in the medical community the causation opinion squarely implicated *Frye*. *Id.*

¶12 Like *Ruff*, the central question here is whether the Grants' theory on causation was an accepted theory. It is therefore distinguishable from *Reese*. Ms. Boccia claimed that the theory that trauma caused Mr. Grant's fibromyalgia lacked general acceptance in the medical community. She also provided supporting evidence that opinions purporting to link physical trauma with fibromyalgia were not based on accepted scientific methodology or theory. Because the Grants' expert opinions were subject to *Frye*, we must now determine whether evidence that trauma causes fibromyalgia is generally accepted in the relevant scientific community.

¶13 The Grants contend physical trauma as the cause of fibromyalgia is generally accepted. Based on the record, they claim an overwhelming majority of fibromyalgia experts accept physical trauma as one of the causes of fibromyalgia.

¶14 But the studies and articles cited by both parties and contained in the record suggest there is still significant dispute over whether physical trauma causes fibromyalgia. *See* Dan Buskila & Lily Neumann, *Musculoskeletal Injury as a Trigger for Fibromyalgia/Posttraumatic Fibromyalgia*, 2 CURRENT RHEUMATOLOGY REP. 104 (2000) (Clerk's Papers (CP) at 140, 141) (stating, "[f]ibromyalgia (FM) syndrome is a chronic, painful musculoskeletal disorder of unknown cause. Despite extensive research, the etiology and pathophysiology of FM are still unclear. . . . A traumatic incident has been suggested as a possible etiological factor relating to the onset of FM. Overall data from the literature

are insufficient to indicate whether causal relationships exist between trauma and FM."); Kevin P. White et al., *Perspectives on Posttraumatic Fibromyalgia: A Random Survey of Canadian General Practitioners, Orthopedists, Physiatrists, and Rheumatologists*, 27 J. RHEUMATOLOGY 790 (2000) (CP at 180) (stating, "[t]here may be no issue more contentious in [fibromyalgia] than the causative role of trauma" and further studies are required to verify the conclusion that trauma may cause fibromyalgia); Dan Buskila et al., *Increased Rates of Fibromyalgia Following Cervical Spine Injury: A Controlled Study of 161 Cases of Traumatic Injury*, 40 ARTHRITIS & RHEUMATISM 446 (1997) (CP at 583) (stating, "[f]ibromyalgia syndrome [FMS] is a chronic, painful musculoskeletal disorder of unknown etiology" and "[d]espite extensive research, the etiology and pathophysiology of FMS are still unclear. . . . Evidence that trauma can cause FMS comes from a few case series or case reports and is insufficient to establish causal relationships"); Muhammad B. Yunus et al., *Fibromyalgia Consensus Report: Additional Comments*, 3 J. CLINICAL RHEUMATOLOGY 3324 (1997) (CP at 592, 593) (stating, "it seems more than 51% likely that trauma does play a causative role in some FMS patients" but that author's opinions should not be viewed as "cast in stone" because "[t]he concepts of fibromyalgia are rapidly evolving and one must keep an open mind to new ideas and options as they emanate from ongoing research"); Frederick Wolfe, *Post-Traumatic Fibromyalgia: A Case Report Narrated by the Patient*, 7 ARTHRITIS CARE & RES. 161 (1994) (CP at 615) (stating, "there is no clearly agreed upon mechanism by which an injury could cause fibromyalgia"); Clerk's Papers at 733 (J.P. Robinson et al., *Fibromyalgia (FM) Syndrome Following Whiplash (WL) Injury?* (stating, "[t]he role of trauma as a cause of fibromyalgia (FM) is uncertain")); Graciela S. Alarcon, *Fibromyalgia, in* CLINICAL PRIMER OF RHEUMATOLOGY 226 (William J. Koopman ed. 2003) (CP at 744) (stating, "why patients with fibromyalgia experience chronic pain remains unknown"); Frederick Wolfe, *The Fibromyalgia Syndrome: A Consensus Report on Fibromy-*

*algia and Disability*, 23 J. RHEUMATOLOGY 534 (1996) (CP at 846) (stating, "[e]vidence that trauma can cause FM, a potential (or it can) causal proposition, comes from a few case series or case reports"); Kevin P. White et al., *Trauma and Fibromyalgia: Is There an Association and What Does It Mean?*, 29 SEMINARS ARTHRITIS & RHEUMATISM 200 (2000) (CP at 868) (stating, "[w]hether an association exists between trauma and FM remains a question, despite a number of scientifically supported hypothetical constructs that could explain such an association and a recent study documenting an apparent dramatic increase in FM in the year after neck injuries"); Am. Coll. of Rheumatology, *Fact Sheet— Fibromyalgia* (Oct. 2003) (CP at 877) (stating, "[t]he cause of fibromyalgia is unknown").

¶15 None of the authorities presented by either party has the effect of persuasively establishing acceptance in the relevant community as to the cause of fibromyalgia or the causal role of trauma in the development of fibromyalgia. Under *Frye*, the existence of such a consensus is necessary for admissibility of expert opinion testimony that trauma following a car accident caused Mr. Grant's fibromyalgia. This conclusion is also consistent with decisions reached by many courts in other jurisdictions that have excluded evidence of fibromyalgia both under *Frye* and the less stringent test enunciated in *Daubert*.[2]

¶16 In *Marsh v. Valyou*, 917 So. 2d 313, 2005 Fla. App. LEXIS 20156, at *2, the plaintiff filed an automobile negligence action alleging her fibromyalgia was caused by four separate and unrelated automobile accidents occurring between August 1995 and January 1998. Prior to trial, one of the defendants moved to prevent the plaintiff from presenting expert testimony that one or more of the acci-

---

[2] In *Daubert*, 509 U.S. at 589-94, the United States Supreme Court rejected the *Frye* general acceptance standard for determining the admissibility of scientific evidence and announced a new standard for admitting both novel and well-accepted scientific evidence: the evidence must pertain to "scientific knowledge" defined as falsifiable scientific theory, capable of being empirically tested. Under *Daubert*, it is the trial judge's task to determine "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* at 592-93.

dents caused her fibromyalgia, asserting such evidence failed to meet the standards set forth in *Frye. Id.* at \*3. The trial court granted the defendant's motion, finding the underlying theory of causation was new or novel within the meaning of *Frye* and was subject to the *Frye* test. *Id.* at \*10-11. The court further determined the expert evidence had to be excluded under *Frye* because the overwhelming consensus of the experts was that the evidence and data were insufficient to establish a causal relationship between trauma and fibromyalgia. *Id.* at \*11. On appeal, the Florida Court of Appeals affirmed the trial court, ultimately finding the testimony was properly excluded under *Frye* because "no scientifically recognized connection between trauma and fibromyalgia exists." *Id.* at \*46.

¶17 In *Riccio v. S&T Contractors*, 56 Pa. D. & C.4th 86, 87 (2001), the defendants sought to exclude evidence of a causal link between a deck collapse and the plaintiff's fibromyalgia. The court found that because none of the authorities presented by the plaintiff established a consensus in the relevant scientific community as to the cause of fibromyalgia or of the particular causal role between trauma and the onset of fibromyalgia, such evidence was inadmissible under both *Frye* and *Daubert. Id.* at 111, 119.

¶18 In *Black*, 171 F.3d 308, the plaintiff slipped on the floor of the defendant's supermarket and was injured. Her treating physician thereafter diagnosed her as suffering from fibromyalgia. The trial court permitted the plaintiff's expert to testify regarding causation of the fibromyalgia. The defendant appealed, contending the evidence was inadmissible under *Daubert*. The Fifth Circuit reversed, noting, "[t]he underlying predicates of any cause-and-effect medical testimony are that medical science understands the physiological process by which a particular disease or syndrome develops and knows what factors cause the process to occur. Based on such predicate knowledge, it may then be possible to fasten legal liability for a person's disease or injury." *Id.* at 314. The court then concluded no one knew the exact cause of fibromyalgia and expert testimony linking the fall to this condition was unreliable. *Id.*

¶19 In *Vargas v. Lee*, 317 F.3d 498 (5th Cir. 2003), the Fifth Circuit revisited the admissibility of expert testimony on the cause of fibromyalgia. The testimony of the plaintiff's expert that the fibromyalgia was caused by a motor vehicle accident was admitted by the trial court. *Id.* at 500. On appeal, the Fifth Circuit determined that scientific understanding of fibromyalgia had not progressed sufficiently since *Black*, 171 F.3d 308, to permit the admission of the expert's testimony. The court thus concluded medical science had not determined with any degree of reliability that trauma causes fibromyalgia. *Vargas*, 317 F.3d at 501.

¶20 In *Wynacht v. Beckman Instruments, Inc.*, 113 F. Supp. 2d 1205 (E.D. Tenn. 2000), the court held that expert testimony of a causal relationship between a chemical spill at the defendant's laboratory and the plaintiff's fibromyalgia was unreliable and inadmissible under *Daubert*. In so holding, the court stated there was a fundamental distinction between the treating physician's ability to render a medical diagnosis based on clinical experience and the physician's ability to render an opinion on causation of the plaintiff's injuries. *Id.* at 1209. The court thus determined "[t]he ability to diagnose medical conditions is not remotely the same, however, as the ability to deduce, delineate, and describe, in a scientifically reliable manner, the causes of those medical conditions." *Id.*

¶21 Finally, in *Maras v. Avis Rent A Car System, Inc.*, 393 F. Supp. 2d 801 (D. Minn. 2005), the married parents sued a rental car company, claiming a minor accident between the wife and an employee while the wife was returning her rental car caused her fibromyalgia. Under *Daubert*, the court held the plaintiffs' expert testimony regarding the causation of fibromyalgia was not sufficiently reliable to be admissible. *Id.* at 810.

¶22 Here, given the clear disagreement in the relevant scientific community as to the cause of fibromyalgia, which conflict has also been recognized in other jurisdictions across the country, the trial court properly concluded the Grants' proffered expert testimony was subject to the

*Frye* test and was inadmissible. Until medical science determines with sufficient reliability and acceptance that a causal relationship exists between trauma and fibromyalgia, such evidence is inadmissible under the *Frye* test as adhered to by this state.

¶23 Affirmed.

SWEENEY and BROWN, JJ., concur.

Review denied at 159 Wn.2d 1014 (2007).